O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLINDA MASSEY-RHODES, ) | Case No. CV-12-380-SP |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security Administration, ) | |
| Defendant. ) | |

**I.**

**<u>INTRODUCTION</u>**

On January 13, 2012, plaintiff Arlinda Massey-Rhodes filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four specific disputed issues for decision: (1) whether the

administrative law judge ("ALJ") properly assessed lay witness testimony regarding plaintiff's work at the YWCA; (2) whether the ALJ properly determined that plaintiff's lumbar impairment is not legally severe; (3) whether the ALJ properly rejected the opinions of plaintiff's treating physicians; (4) whether the ALJ properly assessed plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 12-21; Defendant's Memorandum in Support of Answer ("D. Mem.") at 2-9.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to explain why he rejected significant probative evidence in his determination that plaintiff engaged in substantial gainful activity, and the ALJ improperly discounted plaintiff's credibility. Therefore, the court remands this matter to the Commissioner of the Social Security Administration ("Commissioner") in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 52 years old on the date of her March 17, 2010 administrative hearing, completed several years of college. AR at 58, 92, 106. Her past relevant work includes employment as a school director and teacher. *Id.* at 106.

On November 29, 2005, plaintiff filed an application for DIB, alleging an onset date of July 12, 2004, due to a large tumor in her right hip, muscle weakness, pain, and memory problems. *Id.* at 135, 203 The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 135, 141, 147.

On June 12, 2007, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 51, 57-84. Vocational expert ("VE") Gail Marin also provided testimony. *Id.* at 84-90. The ALJ denied benefits on July 20, 2007. *Id.* at 39-48.

Plaintiff filed a request for review of the decision in August 2007. *Id.* at 169. On February 15, 2008, the Appeals Council remanded the case, ordering that the ALJ: obtain additional evidence concerning plaintiff's impairments to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence; evaluate lay witness testimony under the guidelines set forth in Social Security Ruling 06-3p and provide reasons for the conclusions reached; give further consideration to plaintiff's maximum residual functional capacity during the period at issue and provide rationale, with specific references to record evidence, in support of assessed limitations, and in so doing, evaluate the treating source opinion under the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, explaining the weight given to such opinion evidence; and, finally, if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base. *Id.* at 133.

On March 17, 2010, plaintiff appeared and testified at a second hearing. *Id.* at 92-127. Vocational expert Gail L. Marin and medical expert Arthur Brovender, M.D. also testified. *Id.* On March 22, 2010, the ALJ again denied plaintiff's claim for benefits ("the 2010 Decision"). *Id.* at 32.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff engaged in substantial gainful activity during the period from her alleged onset date of July 12, 2004 through her date last insured of

Case 2:12-cv-00380-SP   Document 16   Filed 12/06/12   Page 4 of 18   Page ID #:957

December 31, 2009; that is, she was specifically engaged in substantial gainful activity from August 2007 through November 2008. *Id.* at 24.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: benign tumor ("lipoma") with removal and resulting cavity ("seroma"), and morbid obesity. *Id* at 25.

At step three, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments set forth in the Listings. *Id.* at 27.

The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and determined that she had the RFC to perform the full range of sedentary work, as defined in 20 CFR 404.1567(a). *Id* at 28.

The ALJ found, at step four, that plaintiff was able to perform her past relevant work as a teacher from December 2008 through the date last insured of December 31, 2009. *Id.* at 31.

At step five, the ALJ found plaintiff capable of performing other, sedentary work that exists in a significant number of jobs in the national economy. *Id.* at 31-32. The ALJ therefore found plaintiff was not disabled. *Id.* at 32.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 200-202; 1-5. The 2010 Decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

4

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [AC's] conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

**A.  The ALJ Erroneously Determined that Plaintiff Engaged in Substantial Gainful Activity from August 2007 through November 2008**

Plaintiff argues the ALJ erred in determining she engaged in substantial gainful activity from August 2007 through November 2008, because her work was done under special circumstances. P. Mem. at 13-14.

If a plaintiff can engage in substantial gainful activity, she is not disabled within the meaning of the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999); 20 C.F.R. § 404.1571. Substantial gainful activity is work activity that "involves doing significant physical or mental activities" on a full- or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. §§ 404.1572, 416.972. Earnings that exceed a certain amount, as specified in the regulations, create the presumption of substantial gainful activity. 20 C.F.R. §§ 404.1574, 404.1575(c); *see also Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir.1990); *Lewis*, 236 F.3d at 515–16. The plaintiff may rebut this presumption with evidence of her inability to perform the job well, without special assistance, or for only brief periods of time. *Keyes*, 894 F.2d at 1056; see also 20 C.F.R. § 404.1573.

Special conditions are those that "take into account [the] impairment." 20 CFR § 404.1573. Factors that may show a plaintiff worked under such conditions may include that she:

(1) required and received special assistance from other employees in performing work;

(2) was allowed to work irregular hours or take frequent rest periods;

6

  (3) was provided with special equipment or was assigned work especially suited to the impairment;

  (4) was able to work only because of specially arranged circumstances, such as persons preparing for or getting plaintiff from work;

  (5) was permitted to work at a lower standard than other employees; or

  (6) was given the opportunity to work due to family relationships, past association with an employer or the employer's concern for the plaintiff's welfare. *Id.* At this and at all stages of the sequential evaluation, the ALJ must make full and detailed findings of fact that are essential to the ALJ's conclusion so that a reviewing court may determine the basis for the decision and whether substantial evidence supports the Commissioner's decision. *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir.1981). Here, the ALJ's step one analysis does not show that he considered all pertinent evidence.

  Plaintiff worked part-time from mid-August 2007 through November 2008 at the Santa Monica YWCA as a head teacher/program specialist for a child-care program. AR at 116-117, 868. It is undisputed that plaintiff received compensation in excess of the statutory minimum from August 2007 through November 2008. AR at 24; P. Mem. at 13. Therefore, the issue is whether plaintiff has successfully rebutted the presumption that she performed substantial gainful activity while employed at the YWCA.

  Plaintiff provided substantial evidence to rebut the presumption. She testified at the March 2010 hearing that the staff at the YWCA did all of the physical work that would have been required by her position so that she did not have to exert herself at all. AR at 123. For example, staff brought materials to her for activities with the children while plaintiff remained seated. Plaintiff was excused from set up, preparation, and clean up duties, which meant that, rather

than arriving to work between 7:30 a.m. and 8:00 a.m., she arrived when the children arrived. *Id.* The testifying vocational expert acknowledged that the YWCA made special accommodations for plaintiff and explained that, especially considering the ages of the children plaintiff worked with, "it's not common for . . . a teacher to sit." *Id.* at 125. In addition to the testimony provided by plaintiff and the vocational expert, letters from plaintiff's supervisor at the YWCA demonstrated the special accommodations afforded plaintiff at the YWCA. *Id.* at 868-870. Specifically, plaintiff was permitted to work six hours per week from home, sit at all times in each of the work areas, and leave when her physical discomfort was too high. *Id.* Plaintiff bore no responsibility for set up or clean up or for being physically active with the children. *Id.* Significantly, plaintiff's supervisor noted in a March 2010 letter that "[w]e would no longer be able to make these accommodations for [plaintiff] however because of our program's expansion. We now have more children which demands that all staff be physically able to be mobile with the children." *Id.* at 869.

The ALJ failed to discuss plaintiff's or the vocational expert's testimony, or the letters from plaintiff's supervisor at step one or at any subsequent stage of the sequential evaluation. In his evaluation of plaintiff's credibility during his discussion of her RFC, the ALJ referred briefly to the fact her employer was "willing to accommodate [her] due to her highly desirable expertise in humanistic education." *Id.* at 31. But the ALJ failed to discuss or even acknowledge that her previous employer was no longer able to accommodate her. This is insufficient.

If the ALJ chooses to disregard a plaintiff's statements, he must set forth specific cogent reasons for his disbelief. *Lewin v. Schweiker*, 654 F.2d at 635. *See also Robbins v. Comm'r*, 466 F.3d 880, 884–885 (9th Cir. 2006) (ALJ erred in discounting credibility of plaintiff's testimony by failing to provide a " 'narrative

discussion' that 'contains specific reasons for the finding . . . supported by the evidence in the case record' nor was his brief notation 'sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight,' as he is required to do") (citing Social Security Rulings 96–7p and 96–8p). The ALJ's lack of discussion of plaintiff's testimony, the vocational expert's testimony, and plaintiff's supervisor's letters was improper. *See Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984) (per curiam) (the Commissioner must explain why "significant probative evidence has been rejected"). Thus, the court finds that the ALJ's determination regarding substantial gainful activity was both legally erroneous and unsupported by substantial evidence.

**B.   The ALJ Properly Found Plaintiff's Low Back Pain Not to be a Severe Impairment**

Plaintiff contends that the ALJ improperly found that her low back pain was not a severe impairment. P. Mem. at 14-17. Having carefully reviewed the record, the court is persuaded that the ALJ's conclusion was proper.

At step two, the Commissioner considers the severity of the claimant's impairments. 20 C.F.R. § 416.920 (a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 *quoting Smolen*, 80 F.3d at 1290.

The ALJ found there was no evidence that plaintiff's history of lower back pain "had more than a minimal effect" on plaintiff's ability to work. AR at 26. The ALJ principally cited the findings of Dr. Bleecker, a state agency consultative

9

orthopedic surgeon. *Id.* Dr. Bleecker examined plaintiff in October 2009, noting that she complained of low back pain and numbness and tingling going down her right leg into her big toe. *Id.* at 650. Despite these complaints, though, Dr. Bleecker's diagnosis was recurrent lipoma and did not include any condition related to plaintiff's back. *Id.* at 26, 652.

Other objective findings in the record also reflect only slight abnormalities concerning plaintiff's back pain. In April 2006, plaintiff saw treating physiastrist Dr. Mislynne Charles who noted that plaintiff "denied any back pain," although she "was tender over the right sciatic notch." AR at 455-456. While Dr. Charles diagnosed plaintiff with right sciatica, her assessment that there was no evidence of disability supports the conclusion that the condition did not impact plaintiff's ability to function. *Id.* at 456. Plaintiff underwent an MRI on her back in August 2009, but while changes in her spine were noted, they were all characterized as mild or moderate. *Id.* at 671; *see id.* at 26. The MRI was the basis for treating orthopedic surgeon Michael Smith's diagnosis of "disc disease lumbar spine." *Id.* at 742-743. But, as discussed, *infra*, the ALJ properly discounted Dr. Smith's opinion regarding plaintiff's limitations.

Although the ALJ found that plaintiff's back pain was not a severe impairment, the ALJ resolved Step Two in plaintiff's favor, determining that she suffered from the following severe impairments: history of benign tumor ("lipoma") with removal and resulting cavity ("seroma"), and morbid obesity. *Id.* at 25. Therefore, even if the court were to find, which it does not, that the ALJ erred in finding plaintiff's lumbar impairment was "not severe" at step two, the error would have been harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment from the severe

impairments identified at step two was harmless where the step was resolved in the claimant's favor).

### C.     The ALJ Provided Specific and Legitimate Reasons for Rejecting the Opinion of Treating Physicians Brien and Smith

Plaintiff contends that the ALJ improperly rejected the opinions of treating physicians Brien and Smith.  Pl. Mem. at 17-19.  Specifically, plaintiff claims that the ALJ failed to offer specific and legitimate reasons for discounting these physicians' opinions.  *Id.* at 17.  The court disagrees.  As discussed in more detail, below, the ALJ's reasons for discounting these opinions – namely, that they were inconsistent with the medical records overall and inconsistent with the physicians' own treating notes (AR at 30) – were specific, legitimate reasons supported by substantial evidence.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen*, 80 F.3d at 1285 (9th Cir.1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830–31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n. 2 (9th Cir.2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir.1999); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir.1993).

Dr. Smith's and Dr. Brien's opinions concerning plaintiff's physical limitations contradict the opinions of a number of other physicians in the record. Both of these treating physicians completed Hip Impairment Questionnaires on plaintiff's behalf in February 2010 and opined that, in an eight-hour workday, plaintiff could sit, stand and/or walk only up to one hour. *Id.* at 30, 745, 753. Dr. Brien found that plaintiff could lift/carry 10-20 pounds occasionally and up to 10 pounds frequently. *Id.* at 753. Dr. Smith gave a slightly more limited assessment, finding that plaintiff could lift/carry 5-10 pounds occasionally, and lift/carry up to five pounds frequently. *Id.* at 745. Dr. Brien recommended against an eight-hour work day for plaintiff. *Id.* at 755. Dr. Smith noted that the 800 mg of Motrin prescribed to plaintiff made her "dizzy-sleepy-disoriented." *Id.* at 30, 745.

These opinions are contrary to those of treating physiatrist Dr. Mislynne Charles, state agency consultative orthopedic surgeon Dr. Harlan Bleecker, and non-examining orthopedic surgeon Dr. Arthur Brovender, who testified as a

12

medical expert at the March 17, 2010 hearing. *Id.* at 99, 103-106, 455-456, 650-653. Dr. Charles saw plaintiff once, in April 2006. At that time, Dr. Charles observed that plaintiff had normal strength and a normal gait. *Id.* at 29, 456. Dr. Charles noted that plaintiff suffered from right sciatica. *Id.* at 456. Significantly, Dr. Charles opined that, based upon her evaluation, she saw no evidence that plaintiff was disabled. *Id.* at 29, 456. Dr. Bleecker saw plaintiff a few years later, in October 2009. *Id.* at 650-662. He opined that plaintiff could not kneel, squat, or climb, but could lift 10 pounds occasionally and frequently. *Id.* at 29, 653. Dr. Bleecker opined further that in an eight-hour day plaintiff could sit for six hours and stand/walk for four hours, with normal periods of rest. *Id.* The medical expert who testified at the March 2010 hearing, Dr. Brovender, concurred with Dr. Bleecker. *Id.* at 29-30, 103-106. Having not examined plaintiff himself, Dr. Brovender based his opinion upon the portions of the medical records from the case that he had reviewed, including Dr. Bleecker's and Dr. Charles's assessments and the treating notes of Drs. Brien and Smith. *Id.* at 99. Dr. Brovender opined that plaintiff had the Residual Functional Capacity to do sedentary work. *Id.* at 30, 104.

     In resolving the inconsistencies between the various physicians' assessments of plaintiff's physical limitations, the ALJ properly provided two specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Brien and Dr. Smith. *Id.* at 30. The ALJ explained that he gave their opinions little weight because they were (1) inconsistent with the overall medical records and (2) inconsistent with their own treating notes. *Id.* With regard to the overall medical records, the substantial evidence discussed above shows that Dr. Brien and Dr. Smith ascribed more significant limitations to plaintiff than did the other three physicians. The reason proffered by the ALJ to

discount the opinions of Dr. Brien and Dr. Smith – that they were therefore inconsistent with the overall medical records – is specific, legitimate and supported by substantial evidence.

Similarly, the ALJ's second reason – that Dr. Brien's and Dr. Smith's opinions were inconsistent with their own treating notes – is specific, legitimate and supported by substantial evidence. After plaintiff's last surgery in December 2008 for removal of a fluid-filled sac, or seroma, Dr. Brien noted consistently that she was doing well. *See, e.g., id.* at 555, 556, 588. On January 20, 2009, for instance, Dr. Brien observed that plaintiff had "no pain associated with the right thigh. . . . She is doing quite well." *Id.* at 553. At visits in February and March 2009, Dr. Brien noted that plaintiff had no complaints and was doing well. *Id.* at 548, 550. He did opine in March 2009 that plaintiff would need "decreased activities, particularly up and down motion, significant sitting and standing positions as well as squatting until beginning of April." *Id.* at 547. And he noted that while plaintiff's symptoms were "markedly improved," she was experiencing "some discomfort while sitting for any length of time as well as standing." *Id.* at 545. In August of 2009, Dr. Brien reported that plaintiff was "doing well without complaints[,]" although "[s]he still has intermittent discomfort when standing for a long period of time." *Id.* at 711. And in October 2009, plaintiff was reported as "doing reasonably well," albeit with "some episodes of discomfort recently." *Id.* at 710. At a January 21, 2010 appointment, Dr. Brien again observed that plaintiff was "doing reasonably well," and that she denied "any significant complaints." *Id.* at 708. Dr. Brien's consistently positive assessment that plaintiff was doing well and generally complaint free, with "some" or "intermittent" discomfort, does not comport with his February 2010 opinion of significant

14

1 | physical limitations.  Similar to Dr. Brien although not as pronounced, Dr. Smith's
2 | treatment notes indicated that plaintiff was doing well.  *Id.* at 532-533.
3 |      Accordingly, the reasons the ALJ provided to discount the opinions of
4 | treating physicians Drs. Brien and Smith were specific, legitimate and supported
5 | by substantial evidence.
6 | **D.  The ALJ Failed to Properly Consider Plaintiff's Credibility**
7 |      Plaintiff contends that the ALJ failed to properly consider plaintiff's
8 | credibility.  P. Mem. at 19-21.  Specifically, plaintiff argues that the three reasons
9 | the ALJ provided for discounting plaintiff's credibility are not supported by
10 | substantial evidence.  *Id.* at 19-21.  Because the ALJ's erroneous analysis at step
11 | one is inextricably intertwined with his determination of plaintiff's credibility, this
12 | court disagrees.
13 |      The Commissioner must make specific credibility findings, supported by the
14 | record.  SSR 96-7p.  To determine whether testimony concerning symptoms is
15 | credible, the Commissioner engages in a two-step analysis.  *Lingenfelter v. Astrue*,
16 | 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the Commissioner must determine
17 | whether a claimant produced objective medical evidence of an underlying
18 | impairment "'which could reasonably be expected to produce the pain or other
19 | symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344
20 | (9th Cir. 1991) (en banc)).  Second, if there is no evidence of malingering, an
21 | "ALJ can reject the claimant's testimony about the severity of her symptoms only
22 | by offering specific, clear and convincing reasons for doing so."  *Smolen*, 80 F.3d
23 | at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  The
24 | Commissioner may consider several factors in weighing a claimant's credibility,
25 | including:  (1) ordinary techniques of credibility evaluation such as a claimant's
26 | reputation for lying; (2) the failure to seek treatment or follow a prescribed course

of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 29. At the second step, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) "the record reveals" her limitations were not as severe as she alleges; (2) she engaged in activities – including, assisting in the care of her son, light household chores, and yoga – that are inconsistent with a disabling impairment; and (3) she engaged in substantial gainful activity, working as a teacher, through most of 2008. *Id.* at 30-31.

The court understands the ALJ's discounting of plaintiff's credibility because "the record reveals" plaintiff's limitations were not as severe as she claimed "[a]s discussed above" (*see id.* at 30) to mean that the ALJ found the medical evidence did not support her claimed limitations. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence," but it may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In this case, however, it was the only clear and convincing reason provided.

As discussed with respect to step one above, the ALJ erred in finding that plaintiff engaged in substantial gainful activity. For the same reasons, the ALJ's discounting of plaintiff's credibility based on her ostensible ability to engage in substantial gainful activity was not clear and convincing. The court cannot say that the ALJ's error with respect to plaintiff's ability to engage in substantial gainful activity was harmless. This error also may have influenced the ALJ's finding that plaintiff's daily activities were inconsistent with a disabling

impairment. At a minimum, because this finding regarding plaintiff's daily activities appears inextricably intertwined with the ALJ's flawed decision that she engaged in substantial gainful activity, the daily activities reason also is not a clear and convincing reason supported by substantial evidence. Accordingly, the ALJ erred in discounting plaintiff's credibility.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman*, 211 F.3d at 1179-80.

Here, as set out above, remand is required because the ALJ erred in failing to explain his rejection of significant probative evidence at step one and in failing to properly evaluate plaintiff's credibility. On remand, the ALJ shall: (1) consider plaintiff's testimony and the testimony of vocational expert Gail Marin, as well as the evidence provided by plaintiff's supervisor in Exhibit 43F, and either credit their testimony and opinions or provide a cogent explanation supported by substantial evidence for rejecting them; and (2) reconsider plaintiff's subjective

complaints and either credit plaintiff's testimony or provide clear and convincing reasons supported by substantial evidence for rejecting them. The ALJ shall then proceed through the five-step sequential analysis to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: December 6, 2012

SHERI PYM
United States Magistrate Judge